UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PLAINTIFF : | |
|     Emil Anghel, : | |
| : | No. 22-cv-00452 (VLB) |
| v. : | |
| : | |
| DEFENDANT : | October 20, 2022 |
|     Publishers Clearing House. : | |
| : | |
| : | |
| : | |
| : | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS [DKT. 16] AND PLAINTIFF'S MOTION FOR RECONSIDERATION [DKT. 51]

Plaintiff Emil Anghel registered for "lottery-based games" sponsored by Defendant Publishers Clearing House ("PCH"). Anghel contends that PCH disclosed his email address to telemarketers and robocallers who called him approximately 1,000 times per month. When he complained to PCH, the company deactivated his account.

Anghel brings three types of claims: first, unlawful dissemination of his email address without consent in violation of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523, 2701-12 (Count 1); second, breach of contract for prize money he should have been awarded (Counts 2 through 5); and third, breach of good faith and fair dealing. Peppered throughout his complaint are citations to several statutes, including 15 U.S.C. § 45(a)(1) of the Federal Trade Commission Act; 12 U.S.C. § 25a of the National Bank Act; "15 U.S.C., Secs. 42-110 (b) (g) (h)," which the Court construes as Conn. Gen. Stat. §§ 42-110b, 42-110g, and

1

42-110h, i.e. the Connecticut Unfair Trade Practices Act.  He seeks damages based on statutes that are unrelated to his claims or the above cited statutes.[1]

On July 12, 2022, Defendant filed a Motion to Dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Dkt. 16].  Once the motion was fully briefed, the Court scheduled a hearing for November 2, 2022.  [Dkt. 42.]  Thereafter, Anghel requested the Court reschedule the hearing for November 11.  [Dkt. 44.]  On October 5, 2022, the Court cancelled the oral argument, stating, "The Court will issue a written decision on the Motion to Dismiss."  [Dkt. 49.]

Seven days later, Anghel filed a Motion for Reconsideration of the Court's notification that it would be ruling from the papers rather than holding oral argument, [Dkt. 51].

Before the Court are Defendant's Motion to Dismiss and Plaintiff's Motion for Reconsideration.  The Court will first address the Motion for Reconsideration and then move on to the merits of the Motion to Dismiss.  For the following reasons, the Court GRANTS the Motion to Dismiss and DENIES the Motion for Reconsideration.

I. <u>Motion for Reconsideration</u>

Anghel moves for the Court to reconsider its decision to issue a written decision instead of bringing the parties in for a hearing.  He claims that "[t]he court can't just limit its review and decide solely on Defendant's Motion to Dismiss without considering new evidence, facts and information linked to it, that would be

---

[1] He claims entitlement to damages "pursuant to 18 USC Sec. 2520, 42 USC Sec. 1983, and 15 USC Sec. 6611(a)(1)(2) and (b)(3)(5)."

**2**

unfair and unacceptable." [Dkt. 51 ¶ 5.] Specifically, Anghel argues the Motion to Dismiss is "void, unenforceable, unusuable" because Attorney Stephen R. Freeland's first application for admission *pro hac vice* admission was denied (based on a procedural error). He also states he has "questions for both current PCH counsels that he can only do this in open court and under the judge's supervision."

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").

There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*, § 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium).

Having reviewed Anghel's arguments, the Court concludes there is no basis to reconsider its decision to issue a written decision *in lieu* of holding a hearing. Rule 7 of the District of Connecticut Local Rules states that a "Court may, in its discretion, rule on any motion without oral argument." D. Conn. L. Civ. R. 7(a)3. This is particularly true for motions to dismiss, which concern pleadings not evidence. *See generally* Fed. R. Civ. P. 12. It is the Court's obligation to effectuate all Federal Rules of Civil Procedure and its Local Rules in a manner that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accordingly, the Court's determination that a written decision would be the most expedient method to resolve the pending Motion to Dismiss was well-within its discretion.

Anghel's claims that there is "new evidence" that must be considered is wrong. When the Court decided to rule on the papers, Anghel's purportedly new evidence—that Attorney Freeland was not properly admitted when the Motion to Dismiss was filed—was neither new nor relevant. That is, the Motion to Dismiss was filed on July 12, 2022, by Attorney Patrick McHugh.[2]  [Dkt. 16.]  Attorney Freeland did not enter an appearance until September 20, 2022.  [Dkt. 40.]  Three days after his admission, the Court scheduled the hearing, which it ultimately cancelled on October 5. The Court was therefore aware of Attorney Freeland's (ultimately successful) efforts obtain *pro hac vice* status. Because Attorney McHugh filed the briefing on the Motion to Dismiss, Attorney Freeland's appearance status at the time of filing is irrelevant. Therefore, there is no legal

---

[2] The motion referenced Attorney Freeland's forthcoming admission.

4

basis to render the Motion to Dismiss "void, unenforceable, unusuable." To the extent Anghel hopes to ask counsel question under the Court's supervision—such questioning would not have been permitted even if a hearing had been scheduled. Plaintiff's Motion for Reconsideration is therefore DENIED.

II.     Motion to Dismiss

PCH moves to dismiss all Counts on the grounds that they fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

### A. Count 1: Unlawful Dissemination of Plaintiff's Email Address

Anghel's first Count—Defendant's "Dissemination Online of Anghel's Private Email Address Without His Consent"—fails to satisfy the *Twombly/Iqbal* pleading standard. Anghel alleges that PCH disseminated his private e-mail address. [*See* ¶¶ 11-19.] He concluded the dissemination took place because he received phone calls from telemarketers and robocallers. *See id.* Simply put, phone calls and e-mail address are not connected. Therefore, Anghel has not plausibly alleged facts supporting a conclusion that PCH disseminated his e-mail.

What's more, the allegations in the complaint could not support violations of the statutes he cites, i.e., 18 U.S.C. §§ 2510-2523 (the Federal Wiretap Act) and 18 U.S.C. §§ 2701-12 (the Stored Communications Act). As a brief background, the Federal Wiretap Act of 1968 made it unlawful to intercept oral and written communications without consent. *See* 18 U.S.C. § 2511. In 1986, Congress passed the Electronic Communications Privacy Act ("ECPA") to "afford privacy protection to electronic communications." *Id.* at 874. As a general matter:

> The ECPA, as amended, protects wire, oral, and electronic communications while those communications are being made, are in transit, and when they are stored on computers. The Act applies to email, telephone conversations, and data stored electronically.

Electronic Communications Privacy Act of 1986 (ECPA), *Bureau of Justice Assistance U.S. Dep't of Justice*, (accessed 10/15/22), available at https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/statutes/1285. More specifically, the ECPA expanded the Federal Wiretap Act to protect "electronic communications" in addition to those oral and written. 18 U.S.C. §

6

2510.  The ECPA also created the Stored Communications Act, which protects electronically stored communications.  18 U.S.C. § 2701.

The ECPA does not protect disclosure of an e-mail address.  This is because an e-mail address is not an "electronic communication."  Section 2510 defines an "electronic communication," in relevant part, as "any <u>transfer</u> of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…."  18 U.S.C. § 2510(12).  In other words, the statute protects the content of a communication (i.e., what is written in the e-mail), not the instrument (i.e., the e-mail address).  *See generally* 18 U.S.C. § 2511 (prohibiting the interception and disclosure of wire, oral or electronic communications); 18 U.S.C. § 2701 (prohibiting unlawful access to stored communications); *United States v. Prada*, 289 F. Supp. 2d 1291, 1304 (D. Kansas) (2003) ("Recorded phone numbers in a cell phone's memory are not the contents of a communication; rather, the contents would be the substance of the conversation-something that can be heard.").  Because an e-mail address is not a communication, the ECPA does not apply here.  Therefore, Count 1 is DISMISSED.

**B.  Counts 2 through 5: Breach of Contract Actions**

Anghel brings four breach of contract counts, alleging that PCH owes him a range of $5,000 to $1,000,000 for each lottery he entered but did not receive money.  He attached four e-mails soliciting Anghel's participation in a sweepstakes, each of which he contends are the contracts underlying Counts 2 through 5.

7

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."[3]  *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014).  With respect to the first element, "[t]he rules governing contract formation are well settled."  *Auto Glass Exp., Inc. v. Hanover Inc. Co.*, 293 Conn. 218, 227 (2009).  One party must make an offer and the other party must accept that offer.  *See id.*

The Court has assessed each of the e-mails attached to the Complaint, and finds PCH did not breach a contract with Anghel.  This is because PCH's offer was the <u>possibility</u> of winning prize money:

- Contract 1: A "1,000,000.00 prize will definitely be awarded on May 28th. Now we need you to sign off, Emil, <u>by entering to show us you want to win</u> on May 28th."  [Dkt. 1-1, Ex. 2.]

- Contract 2: "Yes, we'll be hitting the road soon to award a $1,000,000.00 SuperPrize and there's a definite <u>possibility</u> that we could soon be surprising you at 136 Allen Pl!" [Dkt. 1-1, Ex. 3.]

- Contract 3: Emil, search now and we will disburse a $1,000,000.00 SuperPrize into your bank account, <u>should you be selected</u> the winner of PCH Gwy. #19000."  [Dkt. 1-1, Ex. 4.]

- Contract 4: "Please note that all recipients of this communication have been issued a <u>chance to win</u> $5,000.00 A Week For Life.  Failure to reply will result in <u>termination of eligibility</u> to receive any prize monies that may have been won with a response from this notice."  [Dkt. 1, Ex. 5.]

By entering his name into the sweepstakes, Anghel accepted the offer to be <u>considered</u> as one among many eligible for the prize.  Anghel did not allege or

---

[3] Defendant assumes Connecticut law applies to this contract.  Because Plaintiff does not object and neither the pleadings nor exhibits indicate another state's law should apply, the Court will apply Connecticut law.  *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013) ("[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs.").

provide documentation that PCH identified him as the winner of any of the four sweepstakes.  Because PCH never guaranteed Anghel prize money, there is no breach.  *See Bryan v. Am. Family Pub.*, No. 20-CV-4791 (AMD) (RML), 2020 WL 7229579, at * 2 (E.D.N.Y. Dec. 7, 2020) ("Though the plaintiff claims that he won the sweepstakes, each submission attached to his complaint provides that the plaintiff only accepted AFP's offer of the opportunity to enter a contest in which he *could have* been selected for the grand prize. The plaintiff was not identified as the winner of the prize, nor did he have a matching prize claim number.").  Accordingly, Counts 2 through 5 must be DISMISSED as not plausible.

### C.  Count 6: Breach of Good Faith and Fair Dealing

Implied in every contract is a covenant of good faith and fair dealing. *Renaissance v. Mgmt. Co., Inc., v. Connecticut Hous. Fin. Auth.*, 281 Conn. 227, 240 (2007).  "In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Id.*  A defendant breaches this duty of good faith and fair dealing if it "impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract" and such actions are "taken in bad faith." *Id.*  In other words, the covenant cannot be breached if the underlying contract is not breached.

Because the Court finds that PCH did not breach any of its contracts, Count 6 is DISMISSED.

### D. Other Statutes

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). As PCH points out, Anghel cited numerous statutes throughout the Complaint that were not incorporated into any claim but are alleged to have been violated. *See* [Dkt. 1 ¶¶8-9, 41.] PCH carefully addressed each statute and explained why they do not apply here.

The Court has assessed the allegations in the context of these statutes and agrees with PCH. To the extent Anghel intended to assert a CUTPA claim for violation Connecticut's sweepstakes laws, Conn. Gen. Stat. §§ 42-295 *et seq.*, the Court finds that he has not alleged facts stating any of these laws were violated. *See Triestman*, 470 F.3d at 477 ("[W]e cannot read into *pro se* submissions claims that are not 'consistent' with the pro se litigant's allegations or arguments that the submissions themselves do not 'suggest….'") (internal citations omitted); *see also Felder v. U.S. Tennis Assoc.*, 27 F.4th 834, 841 (2d Cir. 2022) ("Nevertheless, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level.") (internal quotation marks omitted). While the Complaint does not raise causes of action under these statutes, even if it did the Court concludes Anghel has failed to state a claim upon which relief may be granted.

## III.     Conclusion

**For the above reasons, this case is DISMISSED for failure to state a claim.**

**IT IS SO ORDERED**

_____

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: October 20, 2022**